UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JENS BENDSEN, et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CV50 JCH |
| ) | |
| GEORGE WESTON BAKERIES ) | |
| DISTRIBUTION INC., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, filed July 25, 2008. (Doc. No. 22). The matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Jens Bendsen is a citizen of the State of Missouri, residing in St. Charles County. (First Amended Complaint ("Compl."), ¶ 5). Plaintiff Douglas Pecaut is a citizen of the State of Missouri, residing in St. Louis County. (Id., ¶ 6). Defendant George Weston Bakeries Distribution Inc. ("GWBD") is a Delaware corporation registered to do business in the State of Missouri. (Id., ¶¶ 4, 7).

GWBD is a wholesale distributor of fresh bakery products produced by affiliates of GWBD. (Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("Defendant's Memo in Support"), P. 2). The products are sold and distributed to retail food outlets, restaurants and institutions through a network of distributors such as Plaintiffs. (Id.).

The individual distributors purchase the distribution rights to certain of the GWBD brands in certain territories, called "Sales Areas," from either their current owners or GWBD itself. (Id.).[1]

Plaintiffs Bendsen and Pecaut signed their Distribution and Security Agreements with GWBD on May 17, 2004, and July 28, 2003, respectively. (Compl., ¶¶ 42-43; Defendant's Motion to Dismiss, att. Exhs. A, B, C [2]). The terms of the Distribution Agreements expressly characterize Plaintiffs as independent contractors, as follows:

> **INDEPENDENT CONTRACTORS**: The parties intend to create an independent contractor relationship and it is of the essence of this Agreement that DISTRIBUTOR be an independent contractor for all purposes and DISTRIBUTOR shall only identify himself as such in all third party dealings. Any contrary final determination by any board, tribunal or court of competent jurisdiction shall require the amendment of this Agreement in any way necessary to establish an independent contractor relationship. As an independent contractor, DISTRIBUTOR has the right to operate the business as DISTRIBUTOR chooses, and shall bear all risks and costs of operating such business. DISTRIBUTOR has no authority to retain any person on behalf of GWBD. It is expressly understood that DISTRIBUTOR has no claim, or right under any circumstances, to any benefits or other compensation currently paid by GWBD to employees, or hereafter declared by GWBD for the benefit of employees. No fiduciary relationship exists between the parties.

(Defendant's Exhs. A, B, § 2.3).

---

[1] According to Defendant, individual distributors order and purchase product from GWBD, pick it up at a local GWBD depot, and then sell and deliver it to customers within their territory. (Defendant's Memo in Support, P. 2). Distributors earn income by keeping the difference between what they pay for the products, and the price at which the products are sold to their customers. (Id.).

[2] In support of its Motion to Dismiss, Defendant attaches the contracts and plans referenced in the Complaint. When evidence of matters outside the pleadings are included with a motion to dismiss, "the Court may either treat the motion as one to dismiss and exclude the matters outside the pleadings, or treat the motion as one for summary judgment and provide the parties with notice and an opportunity to provide further materials." Brasch v. Peters, 479 F.Supp.2d 1045, 1054 (E.D. Mo. 2007) (citation omitted). The Court may, however, consider documents "necessarily embraced by the complaint" without converting a motion to dismiss into one for summary judgment. Enervations, Inc. v. Minnesota Mining and Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004). Here, both the Distribution Agreements and the plans submitted by Defendant necessarily are embraced by the Complaint. As such, the Court will consider the attached documents in ruling on Defendant's Motion to Dismiss.

In the instant suit, Plaintiffs allege they are not independent contractors, but rather are current or former employees of GWBD. (Compl., ¶¶ 8, 10). Plaintiffs base this allegation on their contention that, rather than treat them as independent contractors, GWBD exercised pervasive control over the method, manner and means of Plaintiffs' work and business by, among other things, forcing Plaintiffs to buy and distribute products not described in their Distribution Agreements, and controlling both the price at which Plaintiffs purchase their baked goods from GWBD and that at which they later sell the baked goods to customers. (Id., ¶¶ 14-40). Plaintiffs continue to assert that by wrongfully classifying them as independent contractors, GWBD violated ERISA by denying Plaintiffs pension, health, disability, group insurance, dependent care and/or other benefits available to employees. (Id., ¶ 11).

Plaintiffs filed their First Amended Complaint in this matter on July 8, 2008. (Doc. No. 20).[3] In Count I, Plaintiffs seek to rescind their Distribution Agreements, based on allegedly false representations by GWBD to the effect that Plaintiffs would operate as independent contractors. (Compl., ¶¶ 57-67). In Count II, Plaintiffs seek to recover business expenses they have incurred, under a theory of unjust enrichment. (Id., ¶¶ 68-75). In Counts III, IV and V, Plaintiffs assert claims under the Missouri Minimum Wage Law ("MMWL")[4], the Federal Insurance Contribution Act ("FICA"), and the Federal Unemployment Tax Act ("FUTA"). (Id., ¶¶ 76-90). In Count VI, Plaintiffs claim GWBD violated ERISA, by denying them benefits under the qualified plans. (Id., ¶¶

---

[3] Plaintiffs purport to bring their action on behalf of themselves and all others similarly situated.

[4] In their response to Defendant's Motion to Dismiss, Plaintiffs indicate their intention to withdraw their claims based on the MMWL. (Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("Plaintiffs' Opp."), P. 13). The Court thus considers Count III abandoned and will not address it in this Order.

91-99). Finally, in Count VII Plaintiffs seek a declaration that Defendant's actions violated ERISA, FICA, and FUTA. (Id., ¶¶ 100-102).

As stated above, Defendant filed the instant Motion to Dismiss on July 25, 2008, seeking judgment in its favor on all Counts of Plaintiffs' First Amended Complaint. (Doc. No. 22).

## MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Additionally, the Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted if the Complaint does not contain, "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations, "must be enough to raise a right to relief above the speculative level." Id. at 1965 (citations omitted).

## DISCUSSION

### I. ERISA Claims (Count VI)

In its Motion to Dismiss, Defendant first asserts Plaintiffs lack standing to sue under ERISA, as they are not participants in the applicable GWBD ERISA Plans. (Defendant's Memo in Support, PP. 5-10). In order to bring a civil action under ERISA, a plaintiff must have statutory standing. Hastings v. Wilson, 516 F.3d 1055, 1060 (8th Cir. 2008) (citations omitted). To have statutory standing a plaintiff must be, "a participant, beneficiary or fiduciary" of the ERISA plan. Id., quoting 29 U.S.C. § 1132(a)(2). ERISA defines who qualifies as a "participant" at § 1002(7):

> The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C § 1002(7). The Supreme Court has interpreted this definition of "participant" to include, "employees in, or reasonably expected to be in, currently covered employment, or former employees who have....a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotations and citations omitted).

The benefit plans available to eligible GWBD employees are: The Weston Foods, Inc. Savings Plan; The Weston Foods, Inc. Savings Plan for Collectively-Bargained Employees; the George Weston Bakeries Inc. Hourly Employees Retirement Income Plan; and the Weston Foods, Inc. Health and Welfare Plan.[5] (Defendant's Exhs. E-H). All four plans provide explicit definitions regarding who constitutes an employee under the terms of the plan. For example, both the Weston Foods, Inc. Savings Plan and the Weston Foods, Inc. Savings Plan for Collectively-Bargained Employees state:

> Employee means an employee of the Employer....under the common law test;....For the avoidance of doubt, the term Employee shall also not include any individual for any period during which the individual (i) is subject to an agreement, signed by the individual, which provides that the individual has no claim to any benefits paid by the Employer to or for the benefit of its employees, or (ii) without regard to any retroactive change in treatment, is contemporaneously treated by the Employer for federal tax purposes as other

---

[5] Defendant maintains these are the only plans available to its employees (Defendant's Memo in Support, P. 6), and Plaintiffs present no evidence to the contrary. (See Plaintiffs' Opp., P. 3).

than a common law employee through issuance of a Form 1099 rather than a Form W-2.[6]

See Defendant's Exhs. E, F, § 1.20. The two plans continue to define "Participant" as "an Employee who becomes a Participant pursuant to Article 2." Id., § 1.30. Finally, the Weston Foods, Inc. Health and Welfare Plan provides as follows: "The following individuals are ineligible to participate in the Plan:....(3) those individuals who are not on the Company payroll (such as consultants and independent contractors), whether or not they are later determined to be employees of the Company,..." (Defendant's Exh. H, P. 8).

In the instant case, as stated above Plaintiffs signed Distribution Agreements stating in relevant part: "The parties intend to create an independent contractor relationship and it is of the essence of this Agreement that DISTRIBUTOR be an independent contractor for all purposes....It is expressly understood that DISTRIBUTOR has no claim, or right under any circumstances, to any benefits or other compensation currently paid by GWBD to employees, or hereafter declared by GWBD for the benefit of employees." (Defendant's Exhs. A, B, § 2.3). Upon consideration of the Plans at issue, in conjunction with the quoted provision of the Distribution Agreements signed by Plaintiffs, it is clear Plaintiffs are not participants in Defendant's ERISA Plans. In other words, by disavowing any claim to benefits or other compensation paid by GWBD to or on behalf of its employees, Plaintiffs removed themselves from the categories of "Employee," and thus "Participant," provided for in the Weston Foods, Inc. Savings Plan, the Weston Foods, Inc. Savings Plan for Collectively-Bargained Employees, and the George Weston Bakeries Inc. Hourly Employees Retirement Income Plan. (See Defendant's Exhs. E, F, §§ 1.20, 1.30; Defendant's Exh. G, §§ 1.15,

---

[6] The definition of "Employee" under the George Weston Bakeries Inc. Hourly Employees Retirement Income Plan is similar, except that it further excludes employees who are not paid on an hourly basis. (See Defendant's Exh. G, § 1.15).

2.1).⁷ Plaintiffs further do not qualify as participants in the Weston Foods, Inc. Health and Welfare Plan; in other words, although Plaintiffs allege the money paid by customers went directly to GWBD, who in turn paid Plaintiffs from those funds (see Compl., ¶ 22), the Court finds such allegation insufficient to establish that Plaintiffs were on the Company payroll, as required by the Plan. (See Defendant's Exh. H, P. 8). Plaintiffs thus lack standing to bring an action under ERISA, as they are not, "employees in, or reasonably expected to be in, currently covered employment, or former employees who have....a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." Firestone Tire and Rubber Co., 489 U.S. at 117 (internal quotations and citations omitted); see also Kienle v. Hunter Engineering Co., 24 F.Supp.2d 1004, 1007 (E.D. Mo. 1998).

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), is not to the contrary. As explained by the Tenth Circuit Court of Appeals:

> In *Darden*, the Supreme Court simply held that, since Congress had failed to provide a satisfactory or helpful definition of "employee" in ERISA, where there was ambiguity about whether someone seeking benefits was an employee or not, the common law definition would apply. *The opinion does not say that any person meeting the common law definition of employee is entitled to ERISA benefits.* Thus, it by no means indicates that [Plaintiffs], should they prove they meet the test for common law employees, would automatically be entitled to participate in the Plans. *Indeed, it is well established that employers may exclude categories of employees from their ERISA plans.*

Capital Cities/ABC, Inc. v. Ratcliff, 141 F.3d 1405, 1409 (10th Cir.) (citations omitted) (emphasis added), cert. denied, 525 U.S. 873 (1998). Thus, regardless of whether Plaintiffs meet the common law definition of employee, in the instant case the Distribution Agreements define the relationship between the parties, and under those Agreements it is clear Plaintiffs are not entitled to benefits under

---

⁷ Plaintiffs further provide no evidence they received Form W-2s from Defendant, rather than Form 1099s. (See Defendant's Exhs. E, F, § 1.20; Defendant's Exh. G, § 1.15).

the Plans.[8]  Id. at 1410.  Defendant's Motion to Dismiss Count VI of Plaintiffs' First Amended Complaint must therefore be granted.[9]

## II.     FICA and FUTA Claims

In its Motion to Dismiss, Defendant next asserts Counts IV and V of Plaintiffs' First Amended Complaint must be dismissed, because neither FICA nor FUTA provides for a private cause of action. (Defendant's Memo in Support, PP. 12-15).  In order to determine whether a federal statute creates a private right of action, this Court must consider:  "(1) whether plaintiff belonged to 'the class for whose especial benefit the statute was enacted,' (2) whether there is 'any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one,' (3) whether implying such a remedy is 'consistent with the underlying purposes of the legislative scheme,' and (4) whether the cause of action is one 'traditionally relegated to state law' such that 'it would be inappropriate to infer a cause of action based solely on federal law.'"  Wright v. American Airlines, Inc., 249 F.R.D. 572, 574 (E.D. Mo. 2008), quoting Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). "In subsequent private-right-of-action cases, the Supreme Court has clarified that the central inquiry is whether Congress intended to create, either expressly or by implication, a private cause of action." Umland v. Planco Financial Services, Inc., 2008 WL 4138408 at *6 (3rd Cir. Sep. 9, 2008) (internal quotations and citations omitted).

---

[8] In their response, Plaintiffs argue that because they were fraudulently induced to enter into their Distribution Agreements, the Agreements are voidable.  (Plaintiffs' Opp., PP. 3-4).  Even assuming this to be true, at best Plaintiffs' remedy would be to rescind the contracts and seek rescissionary damages; Plaintiffs still would not qualify as Participants under the relevant ERISA Plans.

[9] In light of the above ruling, the Court need not consider Defendant's assertion that Plaintiffs' ERISA claims are barred for failure to exhaust administrative remedies.

While the Eighth Circuit has not addressed whether FICA and FUTA create private rights of action, the majority of courts considering the issue has held they do not. See, e.g., Umland, 2008 WL 4138408 at *6; Spilky v. Helphand, 1993 WL 159944 (S.D. N.Y. May 11, 1993); Salazar v. Brown, 940 F.Supp. 160, 165-66 (W.D. Mich. 1996) (criticizing and rejecting Sanchez v. Overmyer, 845 F.Supp. 1178 (N.D. Ohio 1993), in which the district court found a private right of action under FICA); McDonald v. Southern Farm Bureau Life Ins. Co., 291 F.3d 718, 726 (11th Cir. 2002) (finding no private right of action under FICA even when the relief sought is injunctive in nature); Oplchenski v. Parfums Givenchy, Inc., 2007 WL 495289 (N.D. Ill. Feb. 12, 2007); Westfall v. Kendle Intern., CPU, LLC, 2007 WL 486606 at *17 (N.D. W.Va. Feb. 15, 2007) (declining to extend Sanchez to cases not involving the Agricultural Workers Protection Act). Upon consideration, this Court concurs with the analysis of those courts, that neither FICA nor FUTA creates a private right of action for Plaintiffs here. See Umland, 2008 WL 4138408 at *6. Defendant's Motion to Dismiss Counts IV and V of Plaintiffs' First Amended Complaint will therefore be granted.

### III. Fraud Claim

In its Motion to Dismiss, Defendant next asserts Count I of Plaintiffs' First Amended Complaint must be dismissed, as Plaintiffs fail to plead fraud with sufficient specificity. (Defendant's Memo in Support, PP. 16-17). Rule 9(b) of the Federal Rules of Civil Procedure provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Infonow Solutions of St. Louis, LLC v. National City Corp., 2008 WL 4057804 at *4 (E.D. Mo. Aug. 27, 2008) (internal quotations and citations omitted)). Rather, "[t]o satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the

defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir.) (citations omitted), cert. denied, 127 S.Ct. 189 (2006). "Put another way, the complaint must identify the who, what, where, when, and how of the alleged fraud." Id. (internal quotations and citations omitted). Courts "interpret this rule of pleading in harmony with the principles of notice pleading," however. Infonow, 2008 WL 4057804 at *4 (internal quotations and citations omitted). "Therefore, the pleading does not have to show all of these factors under Rule 9(b) to plead fraud with sufficient particularity, but must state enough so that its pleadings are not merely conclusory." Id. (internal quotations and citation omitted).

Count I of Plaintiffs' First Amended Complaint alleges in relevant part as follows:

58. Before Bendsen entered into his Distribution Agreement with GWBD, Jim Landers told Bendsen that as a distributor of GWBD products Bendsen would own his own business, be independent and it would be Bendsen's business to build and run [as] he saw fit.

59. Before Pecaut entered into his Distribution Agreement with GWBD, Jim Landers and Jeff Van Buskirk told Pecaut that as a distributor of GWBD products Pecaut would be his own boss and told [him] he could run his business and delivery route his own way....

61. At all times relevant, Landers was an employee and agent of GWBD acting within the course and scope of his employment and, upon information and belief, a regional manager whose territory included the St. Louis metropolitan area.

62. Van Buskirk was at all time relevant an employee of GWBD acting within the course and scope of his employment and, upon information and belief, an account manager whose accounts in relevant part are located in the St. Louis metropolitan area.

63. GWBD's representations in Paragraphs 58 through 60, by and through its employees and agents, were false and Defendant knew the representations were false at the time they were made.

64. Plaintiffs....would not have entered into a Distribution Agreement with GWBD if they [knew] GWBD's representations in Paragraphs 58 through 60

> were false. The false representations were material to the decision of Plaintiffs...to enter into a Distribution Agreement with GWBD. Plaintiffs.... relied on the representations as true and signed the Distribution Agreements and in so relying, Plaintiffs were justified and using ordinary care.
>
> 65. As a direct result of such representations Plaintiffs....suffered pecuniary loss and actual damages of at least the amount each paid for a distributorship from GWBD.
>
> 66. GWBD intentionally concealed the true nature of the relationship contemplated between GWBD and Plaintiffs....to avoid paying wages and other benefits commonly afforded to employees.

(Compl., ¶¶ 58-59, 61-66).

Under Missouri law, the elements of fraud are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the hearer's right to rely thereon, (9) and the hearer's consequent and proximate injury." Toghiyany v. AmeriGas Propane, Inc., 309 F.3d 1088, 1092 (8th Cir. 2002) (internal quotations and citations omitted). "The critical element in a fraud case based on a statement of present intent is proof that the speaker, at the time of the utterance, actually did not intend to perform consistently with his words." Id. (internal quotations and citation omitted).

Upon consideration of the foregoing, the Court finds Plaintiffs' claim of fraud sufficient to survive Defendant's Motion to Dismiss. In other words, Plaintiffs' fraud claim consists of allegations that are not merely conclusory, but instead are specific enough to enable Defendant to construct an appropriate response. Furthermore, the Court finds this case distinguishable from Hyatt v. Trans World Airlines, Inc., 943 S.W.2d 292 (Mo. App. 1997), as in that case there was no indication that the defendant's representation was false at the time it was made, or that the defendant's intent at the time of the representation was not to act in accordance with the representation. Id. at 295. By way

of contrast, in the instant case Plaintiffs assert the practices rendering the representations false were well established, and thus known to GWBD and its employees at the time of the representations. (Plaintiffs' Opp., PP. 10-11). Defendant's Motion to Dismiss Count I of Plaintiffs' First Amended Complaint must therefore be denied.

## IV.   Unjust Enrichment Claim

In Count II of their First Amended Complaint, Plaintiffs seek recovery of payments allegedly made to GWBD pursuant to their Distribution Agreements, under a theory of unjust enrichment. (Compl., ¶¶ 69-75). Specifically, Plaintiffs maintain that since entering into their respective agreements with GWBD, they have incurred substantial expenses for, among other things, vehicle purchase, maintenance and insurance. (Id., ¶ 70). Defendant counters that Count II must be dismissed, because the voluntary payment doctrine bars recovery of money voluntarily paid with full knowledge of the facts. (Defendant's Memo in Support, PP. 17-19). Defendant further asserts Plaintiffs' unjust enrichment claim fails, as GWBD was not enriched by Plaintiffs' payments to third parties. (Id., P. 19).

"[U]njust enrichment occurs where a benefit is conferred upon a person under circumstances in which retention by him of that benefit without paying its reasonable value would be unjust." Associate Engineering Co. v. Webbe, 795 S.W.2d 606, 608 (Mo.App. 1990) (citation omitted). Upon consideration, the Court finds it need not consider whether Plaintiffs' unjust enrichment claim is barred by the voluntary payment doctrine, because with their allegations Plaintiffs fail to establish Defendant actually received a benefit. Specifically, the Court notes Plaintiffs acknowledge the payments at issue were made not to Defendant, but to third-parties. (Plaintiffs' Opp., P. 12). Plaintiffs continue to assert that, "Plaintiffs' payments to third parties unjustly enriched GWBD because, as the allegations in the Amended Complaint show, those payments would have been

required to have been paid by GWBD if plaintiffs were its employees." (Id.). The Court finds no authority for this proposition, however. Furthermore, there is no evidence that, even had Plaintiffs been considered employees rather than independent contractors, the relevant agreements between the parties necessarily would have provided that the payments be made by Defendant. In light of these circumstances, Count II of Plaintiffs' First Amended Complaint must be dismissed.

## V. Declaratory Relief

In Count VII of their First Amended Complaint, Plaintiffs seek a judgment declaring that Defendant's actions violated ERISA, FICA, and FUTA. (Compl., ¶¶ 101-102). As described above, however, Plaintiffs' claims under those statutes have been dismissed. Defendant's Motion to Dismiss Count VII of Plaintiffs' First Amended Complaint must therefore be granted.

## VI. Jurisdiction

In their First Amended Complaint, Plaintiffs invoke this Court's original jurisdiction pursuant to 28 U.S.C. § 1331, which grants district courts jurisdiction over claims arising under the laws of the United States, and its pendant jurisdiction under 28 U.S.C. § 1367(a). (Compl., ¶ 2). In light of the above rulings dismissing Plaintiffs' claims under federal law, however, the Court will order the parties to submit briefing on the issue of continued jurisdiction.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 22) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiffs are granted until **Monday, October 6, 2008**, within which to submit a brief outlining their position on whether this Court has jurisdiction over the remaining claims in this suit.

**IT IS FURTHER ORDERED** that Defendant is granted until **Thursday, October 16, 2008**, within which to respond to Plaintiffs' brief on the issue of jurisdiction.

Dated this 26th day of September, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE